HANS JORDAN AND TRUDY JORDAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55207.   Filed October 31, 1956.

*Richard H. MacCracken, Esq.*, for the petitioners.
*Richard W. Janes, Esq.*, for the respondent.

OPINION.

Rice, *Judge:* Section 117 (q) [1] of the 1939 Code provides that the transfer of all substantial rights to a patent shall be considered as the

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(q) TRANSFER OF PATENT RIGHTS.—

(1) GENERAL RULE.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

(A) payable periodically over a period generally coterminous with the transferee's use of the patent, or

(B) contingent on the productivity, use, or disposition of the property transferred.

(2) "HOLDER" DEFINED.—For purposes of this subsection, the term "holder" means—

(A) any individual whose efforts created such property, or

\*        \*        \*        \*        \*        \*        \*

(4) APPLICABILITY.—This subsection shall apply with respect to any amount received, or payment made, pursuant to a transfer described in paragraph (1) in any taxable year beginning after May 31, 1950, regardless of the taxable year in which such transfer occurred.

sale or exchange of a capital asset held for more than 6 months. That subsection of section 117 was added by Public Law 629, 84th Congress, 70 Stat. 404 (1956). Its provisions are substantially identical to section 1235 of the 1954 Code.[2] Section 117 (q) is applicable to taxable years beginning after May 31, 1950. The question before us here is whether the petitioner transferred "all substantial rights" in his patent within the meaning of the statute.

The respondent contends that petitioner did not transfer all substantial rights because, by virtue of that clause in the agreement of August 22, 1945, which reads:

WHEREAS, JORDAN invented the subject matter of said application as a part of his duties while employed by GIVEN and at GIVEN'S direction and expense;

he possessed no substantial patent rights to transfer. We think that argument without merit.

When this case was reopened, the Court heard the testimony of petitioner and of Bert Given. Both witnesses made it clear that there was no agreement that the Givens would have any legal interest in any invention which petitioner might perfect and patent. Neither remembered why the clause on which respondent bases his argument was included in the agreement. Bert Given testified that the lawyer who drew the agreement probably inserted it on his own initiative. Petitioner testified that had his English been as good in 1945 as it was at the time of the hearing, he would have insisted that the clause be eliminated. He testified further that the only provision in the agreement in which he was vitally interested at the time was the one guaranteeing to him the return of his patent rights if the Givens failed to offer the disposal device for sale on the open market prior to January 1, 1947. Both witnesses also testified that petitioner invented the device on his own time.

The only interest which the Givens could have possessed in petitioner's invention was a so-called shop right; and that right we think insufficient to dilute petitioner's "substantial rights to a patent," within the meaning of the statute. As the Supreme Court said in *United States* v. *Dubilier Condenser Corp.*, 289 U. S. 178, 187–189 (1933):

One employed to make an invention, who succeeds, during his term of service, in accomplishing that task, is bound to assign to his employer any patent

___

[2] See S. Rept. No. 1941, 84th Cong., 2d Sess. (1956).

obtained. The reason is that he has only produced that which he was employed to invent. His invention is the precise subject of the contract of employment. A term of the agreement necessarily is that what he is paid to produce belongs to his paymaster. *Standard Parts Co.* v. *Peck*, 264 U. S. 52. On the other hand, if the employment be general, albeit it cover a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent. *Hapgood* v. *Hewitt.* 119 U. S. 226; *Dalzell* v. *Dueber Watch Case Mfg. Co.,* 149 U. S. 315. * * *

\* \* \* \* \* \* \*

The reluctance of courts to imply or infer an agreement by the employee to assign his patent is due to a recognition of the peculiar nature of the act of invention, * * *

* * * Recognition of the nature of the act of invention also defines the limits of the so-called shop-right, which shortly stated, is that where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a non-exclusive right to practice the invention. *McClurg* v. *Kingsland*, 1 How. 202; *Solomons* v. *United States*, 137 U. S. 342; *Lane & Bodley Co.* v. *Locke*, 150 U. S. 193. This is an application of equitable principles. Since the servant uses his master's time, facilities and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business. But the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer had no part. This remains the property of him who conceived it, together with the right conferred by the patent, to exclude all others than the employer from the accruing benefits. These principles are settled as respects private employment.

We are satisfied that at the time petitioner assigned his patent rights in the waste disposal unit, he had "substantial rights" to transfer within the meaning of section 117 (q). It, therefore, follows that the amounts received by him during the years in issue were taxable as capital gains and not as ordinary income.

*Decision will be entered for the petitioners.*