James R. WATKINS and Lucile L. Watkins, Appellants,

v.

UNITED STATES of America, Appellee.

No. 108, Docket 24663.

United States Court of Appeals Second Circuit.

Argued Nov. 15, 1957.

Decided Feb. 26, 1958.

John H. Weir, New Haven, Conn. (Curtiss K. Thompson, New Haven, Conn., on the brief), for plaintiffs-appellants, James R. Watkins and Lucile L. Watkins.

John N. Stull, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Grant W. Wiprud, Attorneys, Department of Justice, Washington, D. C., Simon S. Cohen, U. S. Atty., for the District of Connecticut, Hartford, Conn., on the brief), for appellee, United States of America.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

MOORE, Circuit Judge.

The primary question on this appeal is whether royalty payments received by an inventor, James R. Watkins, and his wife (the taxpayers), during the years 1949 through 1952 from an assignment of the patents should have been treated as capital gains derived from a sale of assets held more than six months (i. e. payments on account of the purchase price of the patents) or were merely ordinary income received under a licensing agreement. The district court held that the payments were properly taxed at income tax rates and denied the plaintiffs' claim for a refund.

The applicable sections of the Internal Revenue Code of 1939 are section 117 (a) (4), 26 U.S.C.A. § 117(a) (4), which governs the royalty payments received in the years 1949 and 1950, and section 117(q) (as added by amendment June 29, 1956, 70 Stat. 404), which governs those payments received in the years 1951 and 1952. Section 117(a) (4) defines "long-term capital gain" as the "gain from the sale or exchange of a capital asset held for more than 6 months." Section 117(q) relates specifically to the transfer of patent rights and states that as a *"General rule.*—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are— (A) payable periodically over a period generally coterminous with the transferee's use of the patent, or (B) contingent on the productivity, use, or disposition of the property transferred."

As the Senate noted in its report on section 1235 of the Internal Revenue Code of 1954, which is substantially the same as section 117(q) of the 1939 Code, the test in determining for income tax purposes whether a patent has been sold is a realistic one. "[T]he entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee, rather than recognizing less relevant verbal touchstones." Sen.Rep. No. 1622, 83d Cong., 2d Sess., pp. 439–40. Accordingly, to answer the question whether the transfer of the patents from Watkins to Watkins Patents, Inc. was an assignment

or a license, it is necessary to examine in some detail the transaction alleged to have been an assignment as well as other facts relating thereto.

In 1937 the taxpayer, Watkins, became an employee of Dillman Industries, Inc., which was engaged in the manufacturing and marketing of wooden boxes and crates. At that time Watkins was the holder of two patents covering wood cleated corrugated shipping containers and had granted to Dillman Industries, Inc. a non-exclusive license to manufacture and sell containers covered by the patents. In addition to Dillman Industries, Inc. licenses had also been granted by Watkins to five other Midwestern firms. During 1938 and 1939 Watkins obtained two additional patents for improvements on the invention.

The manufacture and sale of the containers proved to be successful and in 1940 Watkins and the management of Dillman Industries, Inc., desirous of obtaining wider acceptance of patented products, determined that the best way of obtaining such acceptance was through extensive licensing to other firms in the industry. To this end they organized in 1940 a new corporation, Watkins Patents, Inc., the function of which was to grant limited territorial licenses to manufacture and sell the patented products.

To carry out the plan, five agreements, dated April 27, 1940, were entered into simultaneously, consisting of: (1) an agreement between Watkins and Watkins Patents, Inc. (Exh. A); (2) an agreement between Watkins Patents, Inc. and Dillman Industries, Inc. (Exh. B); (3) an agreement between Watkins and Dillman Industries, Inc. (Exh. C); (4) an agreement between Watkins, Dillman Industries, Inc. and Watkins Patents, Inc. (Exh. D); and (5) an agreement between Watkins and Watkins Patents, Inc., (Exh. E).

By the agreement (Exh. A) Watkins transferred and granted to Watkins Patents, Inc. "the non-transferable exclusive license for the use of and sublicensing under each and all of the above referred to patents, * * * together with all licensing agreements heretofore made under said patents by first party [Watkins] as hereinabove specifically set forth." In return therefor Watkins received $3,800 in cash, one-fifth of the stock of Watkins Patents, Inc. (the other 80% being held by Dillman Industries, Inc. or members of its management) and one-third of the net royalties Watkins Patents, Inc. received from the patented products sold, or an amount equal to 1% of the net sales price of all patented products sold, whichever was greater. In addition to the cash, stock and royalty payments (the tax treatment of which is in issue here), Watkins Patents, Inc. further agreed to give Watkins a non-transferable, non-exclusive license to manufacture and sell at a reduced royalty rate of 1½% of the net sales price. Watkins, however, could not use this license so long as he remained an employee of Dillman Industries, Inc. Although the license was described as non-transferable, any company, not a licensee of Watkins Patents, Inc., with which Watkins should become connected, could operate under the license and in the event that he severed his connection with such company it would still retain the right to operate under the license at the reduced royalty rate. Watkins could also continue to bestow upon any other company with which he might become associated in the future the same licensing rights. In addition Watkins retained the right to approve all sub-licensees of Watkins Patents, Inc. Not only did this veto right give him considerable power over the operations of the corporation but it tended to defeat the purported exclusiveness of the corporation's power to sublicense.

Under the agreement between Watkins Patents, Inc. and Dillman Industries, Inc. (Exh. B) a non-transferable, non-exclusive license was given by Watkins Patents, Inc. to Dillman Industries, Inc. to manufacture and sell the patented products at a reduced royalty of 1% of

net sales, to be increased to 1½% if Watkins left the employ of Dillman Industries, Inc. The agreement between Watkins and Dillman Industries, Inc. (Exh. C.) provided for the cancellation of the original license from Watkins and for Watkins' employment under a new employment contract with Dillman Industries, Inc. The three-party agreement (Exh. D) between Watkins, Watkins Patents, Inc. and Dillman Industries, Inc. provided for the acceptance by Dillman Industries, Inc. of the provisions of the grant from Watkins to Watkins Patents, Inc. contained in the agreement (Exh. A) and the fifth agreement (Exh. E) gave back to Watkins a sublicense from Watkins Patents, Inc. as defined in the first agreement between them (Exh. A).

Appellants argue that the grant of a "license for the use of and sublicensing under each and all of the above referred to patents" conveyed to Watkins Patents, Inc. the right to manufacture and sell the patented products. They, therefore, conclude that appellants thereby divested themselves, in effect, of their interests in the patents. It is unnecessary, however, to pass upon that issue because, even assuming that Watkins Patents, Inc. received these rights, as a result of the five agreements which must be considered together, Watkins emerged from the transaction possessed of so many rights and interests both present and future that much less than a complete transfer was achieved by the transaction.

Among the rights remaining in or bestowed upon Watkins by the various agreements were: (1) a right to royalties; (2) the power of termination in event of failure of the transferee to obtain necessary loans to conduct patent litigation; (3) Watkins' limited right to conduct patent litigation; (4) the restraint of non-transferability on the grant; (5) the fact that through the grant Watkins became a substantial shareholder in the transferee; (6) the reservation to Watkins of the license to manufacture and sell and to sublicense at reduced royalties and with a limited right of transferability; (7) Watkins' right to approve all sublicensees of the transferee.

The district court recognized that it would have been possible for Watkins to have retained some legal interests in the patents without reducing the purported assignment or sale to a license (see the citation of various situations discussed by the courts and set forth in the trial court's opinion, 149 F.Supp. 718, 724). Appellants argue that each of these retained interests was merely incidental to, and not in itself inconsistent with, the passage of ownership, and that the entire aggregate of such interests did not add up to the reservation of substantial rights.

Summarizing the more important features of the retained rights, Watkins Patents, Inc. could not transfer its power to sublicense; Watkins at any time after one year could transfer a valuable and irrevocable sublicense to any firm which he desired to join; Watkins had a veto power over the sublicensees of Watkins Patents, Inc.; and Watkins possessed the conditional right to take over and control patent litigation. By virtue of his stock interest in Watkins Patents, Inc. and his veto power, Watkins also could have had a considerable voice in the affairs of that company.

As the district court clearly pointed out, in no case where an assignment was found did such a mass of interests remain in the transferor. It may well be that Watkins desired to divest himself of many of his rights for tax purposes but at the same time retain as many as possible. In so doing, however, he must accept the risk that the transfer might not meet the standard of releasing "substantially all rights of the owner in the patented property." The very multiplicity of agreements simultaneously executed is significant. Had Watkins desired to divest himself irrevocably of substantially all rights in his patents such a transfer could have been accomplished in a single agreement in simple language conveying such rights.

The conclusion of the trial court "that the plaintiffs have failed to establish that James R. Watkins and those contracting with him either intended or accomplished a sale or assignment of the patents to Watkins Patents, Inc. and the payments in question must be treated as ordinary income and not as capital gains" is clearly justified by an accurate analysis of the agreements evidencing the transaction.

The judgment is affirmed.