FIRST NATIONAL TRUST AND SAVINGS BANK OF SAN DIEGO, as Executor of the Estate of Sidney P. Vaughn, Deceased, and Adelaide L. Vaughn, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 2099–SD–W.

United States District Court
S. D. California, S. D.

Dec. 28, 1961.

Glenn & Wright, Robert E. Kronemyer, San Diego, Cal., for petitioner.

Eugene N. Sherman, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

WEINBERGER, District Judge.

The action is one to recover income taxes paid by the original plaintiffs for the year 1951, the complaint having been filed in 1958. Delays have occurred due to the efforts of counsel to compromise this claim, and by the death of one of the original plaintiffs, Captain Sidney P. Vaughn.

It has been stipulated by counsel that the pre-trial conference order as amended contains all of the relevant evidence that would be introduced by both parties; that said order as amended, together with the exhibits referred to therein be received into evidence and the cause submitted to the Court upon the written briefs of the parties without the necessity of further Court appearances.

The original plaintiffs (Sidney P. Vaughn and Adelaide L. Vaughn) filed a joint income tax return with the Collector of Internal Revenue at Los Angeles, California and reported therein royalties received under various agreements having to do with the transfer of rights in certain patents owned by plaintiff Sidney P. Vaughn, covering inventions perfected by him while a career officer in the United States Navy. The income tax returns reported the royalties as ordinary income. Plaintiffs claim the royalties represented capital gains under the provisions of Section 117(q) of the Internal Revenue Code of 1939 as amended, 26 U.S.C.A. § 117(q). It appears that in 1951 Sidney P. Vaughn received royalty income from patents as follows:

(a) $1,508.98 from the Lux Company, hereinafter called "Lux" with regard to Patent No. 2,163,638.

(b) $28,598.56 from Sponge Products Company, an assignee or successor of N. B. Greenleaf, hereinafter called "Greenleaf", with regard to Patent No. 2,163,638.

(c) $28,598.57 from the latter company with regard to Patent No. 2,358,673.

(d) $5,638.24 from W. E. Kautenberg Co. hereinafter called "Kautenberg" with regard to Patent No. 2,313,787.

It appears that on February 26, 1941, Vaughn and Kautenberg entered into an agreement (Exhibit "B") whereby Kautenberg received a nonexclusive license, subject to licenses theretofore granted to the United States [1] to manufacture and sell devices covered by certain patents of Vaughn, including Patent No. 2,358,673, then in the application stage. No royalty income from Kautenberg as to this patent is involved in this case.

It further appears that this same agreement gave Kautenberg a nonexclusive license with reference to Patent No. 2,313,787, which agreement was, on August 4, 1949, supplemented by another, (Exhibit "C"), giving Kautenberg an exclusive license to manufacture and sell devices covered by Patent No. 2,313,787.

Neither of the Kautenberg contracts mentioned the right to sue for infringement; the rights granted to Kautenberg could be terminated by Vaughn if Kautenberg failed to pay royalties as provided in the contract, or if Kautenberg failed to begin to manufacture and sell within a certain period, or the royalties fell below a certain amount yearly.

It is from these contracts that the royalties from Patent No. 2,313,787 in amount of $5,638.24, from Kautenberg, accrued. No income from Kautenberg as to Patent No. 2,358,673 is mentioned in this case.

It further appears that on October 25, 1938 Vaughn and Lux-Visel, Inc. predecessor of Lux, entered into an agreement (Exhibit "A") whereby Lux-Visel received certain rights in patents or patent applications. No royalty income accruing under this contract is involved in this case, and the contract was not in effect at any time pertinent to this action.

It further appears that on November 23, 1948, Vaughn and Greenleaf entered into an agreement (Exhibit "D") wherein Vaughn transferred to Lux and Greenleaf, subject to the rights of the United States, an exclusive license to manufacture and sell the devices covered by Patent No. 2,163,638, and, subject to the rights of Kautenberg and the United States, an exclusive license to manufacture and sell the devices covered by Patent No. 2,358,673.[2] No income from Kautenberg as to the last named patent is involved herein.

The said contract (Exhibit "D") provided that in the event Greenleaf refused to prosecute any suit for infringement upon demand of Lux or Vaughn, the latter would be permitted to prosecute such suit and to retain the damages, if any, recovered.

The contract provided for a termination of the contract as to either Lux or Greenleaf should a default be made in the payment of royalties by either, and that Greenleaf could grant sublicenses to others, and with such sublicenses, could grant the right to prosecute for infringement.

It is through the contract designated as "Exhibit D" that the royalties from Patent No. 2,163,638 were received by Vaughn from Lux in the sum of $1,508.-98 and $28,598.56 from Sponge Products (Greenleaf's successor) and it is also through this contract that Vaughn re-

1. It appears that the rights referred to as having been granted the United States are those "for the manufacture and use of said inventions by or for the Government for Governmental purposes only, as stated in each application for letters patent and in each patent granted" and have no bearing on the question we are considering in this case.

2. The contract of November 23, 1948 gave to Lux an exclusive license for a certain time with reference to the use of certain patents as to a certain mop only, and the exclusive license of Lux was terminated by a notice from Greenleaf (as provided in the contract) on April 23, 1949. (See Exhibit "F".)

ceived royalties from Patent No. 2,358,-673 in amount of $28,598.57 from Sponge Products.

Counsel have stipulated, and the Court agrees, that the only issue to be decided in this case is:

"Whether plaintiff, Sidney P. Vaughn, transferred all his substantial rights in each of the patents, under the aforesaid licensing agreements, which produced royalty income during the year 1951, within the meaning of Section 117(q) of the Internal Revenue Code of 1939 as amended."

Section 117(q) of the 1939 Internal Revenue Code as amended, read in part:

"Transfer of patent rights.—

"(1) General rule.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(A) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(B) contingent on the productivity, use, or disposition of the property transferred.

"(2) 'Holder' defined.—For purposes of this subsection, the term 'holder' means—

"(A) any individual whose efforts created such property, or

"(B) any other individual who has acquired his interest in such property in exchange for consideration in money or money's worth paid to such creator prior to actual reduction to practice of the invention covered by the patent, if such individual is neither * * *." (The remainder of the section is not pertinent here.)

Section 117(q) is similar to Section 1235 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1235; regulations promulgated and cases decided under the latter section are of value in interpreting the former.

A portion of the 1961 Regulations as to Section 1235, reads as follows:

"§ 1.1235-2 Definition of terms

"For the purposes of section 1235 and section 1.1235-1—

\* \* \* \* \*

"(b) All substantial rights to a patent.

"(1) The term "all substantial rights to a patent" means all rights which are of value at the time the rights to the patent (or an undivided interest therein) are transferred. The circumstances of the whole transaction, rather than the particular terminology used in the instrument of transfer, shall be considered in determining whether or not all substantial rights to a patent are transferred in a transaction. A transfer limited in duration by the terms of the instrument to a period less than the remaining life of the patent is not a transfer of all substantial rights to a patent.

"(2) Rights which are not considered substantial for purposes of section 1235 may be retained by the holder. Examples of such rights are:

"(i) The retention by the transferor of legal title for the purpose of securing performance or payment by the transferee in a transaction involving transfer of an exclusive license to manufacture, use, and sell for the life of the patent:

"(ii) The retention by the transferor of rights in the property which are not inconsistent with the passage of ownership, such as the retention of a security interest (such as a vendor's lien), or a reservation in the nature of a condition subsequent (such as a provision for for-

feiture on account of nonperformance).

"(3) Examples of rights which may or may not be substantial, depending upon the circumstances of the whole transaction in which rights to a patent are transferred, are:

"(i) The retention by the transferor of an absolute right to prohibit sublicensing or subassignment by the transferee.

"(ii) The failure to convey to the transferee the right to use or to sell the patent property.

"(4) The retention of a right to terminate the transfer at will is the retention of a substantial right for the purposes of section 1235."

The Government contends that the transfers set forth in the Exhibits did not meet the criteria of Section 1 of 117(q) of the 1939 Internal Revenue Code as amended for the following reasons:

(1) Only the right to manufacture and sell were conveyed under the provisions of the pertinent agreements.

(2) The grants were not irrevocable, each party to the agreements reserving right of termination under certain stated conditions.

(3) The grants, with the exception of the one relating to Patent No. 2,313,-787 (Vaughn to Kautenberg) were nonexclusive and were subject to the rights of others to manufacture, use and/or sell articles covered by the patents.

The Government argues that Captain Vaughn retained valuable indicias of ownership, as follows:

(a) The right to use the patents.

(b) The right to terminate the contracts.

(c) The right to sue for infringement.

We shall first consider whether the failure to transfer the right to "use" is fatal to the plaintiffs' case.

Counsel for the Government have cited Waterman v. McKenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923. This case was decided in 1891, and has been distinguished in cases having to do with transfer of patent rights rather than suit for infringement. We believe the following statement from Lockhart v. Commissioner of Internal Revenue, 3 Cir., 258 F.2d 343, 349 summarizes the majority view:

"* * * We do not think, however, that the omission of the term 'use' was fatal in this respect. The Waterman case involved the right of the licensee to sue an infringer. The rule of that case has not been strictly applied by the courts in federal tax cases. In such cases the courts look to the realities of the situation rather than to its form. If the grantor has evidenced an intention to surrender to the transferee substantially all his rights in the patent, imperfections in draftsmanship, or the failure to use particular words do not control, and it has been held that, for income tax purposes, the transaction has effected a sale." Se also Magnus v. Commissioner, 3 Cir., 259 F.2d 893, 899; Rollman v. Commissioner, 4 Cir., 244 F.2d 634, 637, 639.

In the Rollman case, (supra) the Court observed, at page 639:

"* * * they divested themselves of the right to manufacture and sell footwear under the patent and granted this right to a corporation controlled by an independent third party. These rights seem to us to amount to full and complete control, for the omission from the contract of the express right to use the patented article did not in any way limit or restrict Rikol in its operations under the patent, or reserve any right of practical value to the Rollmans."

We hold that the failure of the contracts to include the "right to use" the

patents is not of significance in this case.

The contracts carried with them certain rights of termination, in that with the Kautenberg contracts, the agreement might be terminated by Vaughn if Kautenberg failed to pay royalties, or did not manufacture the device, or discontinued the manufacture or if the royalties fell below a certain amount. The Lux and Greenleaf contract could be terminated by Vaughn if the former failed to pay royalties. Certain provisions were inserted to the effect that if Lux defaulted, the rights should pass to Greenleaf, and vice versa, but the end result was that if both defaulted, their rights would revert to Vaughn.

In Walen v. United States, 1 Cir., 273 F.2d 599, 601, it was stated with reference to the "right of recapture", that the courts usually inquire whether such powers are designed simply to protect the transferor's interest in the continuance of the purchase payments. (Citing Merck & Co. v. Smith, 3 Cir., 261 F.2d 162, 164, 165; Rollman v. Commissioner, 4 Cir., 244 F.2d 634, 639–640; Watson v. United States, 10 Cir., 222 F.2d 689, 691, 692; Allen v. Werner, 5 Cir., 190 F.2d 840, 842.)

In Wing v. C. I. R., 8 Cir., 278 F.2d 656, the Court in its opinion at pages 660, 661, reviewed the legislative history of the section here under consideration and of its successor, and noted that the Committee of the Senate in recommending the passage of the legislation stated in its report (S. Rep. No. 1622, 83rd Cong. 2d Sess. pp. 439, 440, U. S. Code Cong. and Adm. News 1954, p. 5083:

"* * * a reservation in the nature of a condition subsequent (e. g., a forfeiture on account of non-performance) are not to be considered as such a retention as will defeat the applicability of this section."

In Magnus v. C. I. R., 3 Cir., 259 F. 2d 893, 900, the Court was of the opinion that provisions for termination which did not vest in the taxpayer the right to terminate the agreement at will did not bar the application of Section 117(q).

 It is clear that the royalties to be paid under the contracts here involved were intended to constitute the purchase price for the rights conveyed; the retention of rights of termination were for the purpose of insuring payment of the purchase price and were conditioned upon the happening of a future event not under the control of, or at the will of, the transferor, and did not remove the transfers from the orbit of Section 117(q). (See also Young v. C. I. R., 2 Cir., 269 F.2d 89, 94.)

We now direct our attention to the Government's argument with reference to the right to sue for infringement.

In the contract with Kautenberg with reference to Patent No. 2,313,787, wherein exclusive rights were given, no mention was made of the right to sue for infringement.

In Schmitt v. C. I. R., 271 F.2d 301, 307, Circuit Judge Barnes (9 Cir.) observed that the agreement in the case before the court failed to expressly confer upon the assignee the right to sue for infringement of the patents in its own name, and said:

"* * * Of course, no express reservation to the contrary was included. Hence the assignment to use would ordinarily give assignee the right to sue jointly with the assignor, and the right to sell would ordinarily give assignee the right to sue in his own name for infringement. * * *"

The Lux-Greenleaf contract expressly included the right to Greenleaf to prosecute in his own name or in the name of Vaughn or Lux any asserted infringement of the patents and to retain any damages recovered by reason of said prosecution. If Greenleaf, on demand, failed to prosecute, then Vaughn and Lux had the right to do so, and to retain damages so recovered.

It is our view that the transferees in the agreements here considered were given the right to sue for infringement and that the Government's contention is without merit.

It does not appear that the exclusive license given Kautenberg under Exhibit "C" to manufacture and sell devices covered by Patent No. 2,313,787 was subject to rights granted by any other contract, (except rights of the United States which we have mentioned as having no effect upon our decision), and it does appear that by such license Vaughn transferred all substantial rights given by the patent. We have no difficulty in holding this conveyance to be a sale of a capital asset within the meaning of the Section here under consideration. For the same reasons, the same holding applies to the license to Lux and Greenleaf under Exhibit "D" with reference to Patent No. 2,163,638.

We now arrive at the consideration of a perplexing question: Whether the transfer, in order to be a sale of a capital asset, must be a conveyance of *all substantial rights given by the patent*, or whether such a sale is accomplished by a grant of *all substantial rights to a patent remaining in, or retained by, the transferor at the time of the transfer*.

Regarding Patent No. 2,358,673, and the contract with Lux and Greenleaf, (Exhibit "D") Vaughn did not transfer all substantial rights given him by the patent, because he had already conveyed a non-exclusive license to manufacture and sell the device covered by such patent to Kautenberg, which license was still outstanding. Plaintiffs maintain that he did transfer all substantial rights in the patent which he had at the time of transfer.

Counsel have recognized this problem, and alluded to it in their briefs. Counsel for the plaintiffs states that no judicial authority has been located on this point, but that it appears from the tenor of the Final Regulations and the court decisions that it is sufficient that the holder transfer all rights which he has at the time of transfer even though they may be less than the whole, and maintains that, despite the fact that plaintiff had transferred all substantial rights he possessed in a series of transfers rather than a single transfer, it is clear that such transfers qualify under Section 117(q) as well as Section 1235 (a).

We note that many of the reported opinions use as a measure the practical value of any interest *reserved*, Young v. C. I. R., 2 Cir., 269 F.2d 89, 92; whether a substantial right *remained* in the inventor, Wing v. C. I. R., 8 Cir., 278 F. 2d 656, 660; the rights *retained*, Schmitt v. C. I. R., 9 Cir., 271 F.2d 301, 307, 308; the rights with which the inventor emerged after the transaction, Watkins v. United States, 2 Cir., 252 F.2d 722, 725.

We note also that the 1961 Regulations which we have quoted above, define substantial rights as "all rights which are of value at the time the rights to the patent are transferred."

Counsel for the plaintiff have cited Hans Jordan, 27 T.C. 265. We have reviewed this case, as well as the opinion in Kavanagh v. Evans, 6 Cir., 188 F.2d 234. The Hans Jordan case had to do with an inventor whose employer already had shop rights in the invention, and the transfer which the inventor claimed was a sale of a capital asset was a grant of all his rights in the patent to the employer. The Tax Court felt that the fact that shop rights already existed in the employer was not enough to dilute the substantial rights transferred, and that there was a sale of capital assets.

The Kavanagh case, supra, was discussed, and appears to have been questioned in a note at page 602 in Walen v. United States, 4 Cir., 273 F.2d 599, as follows:

"Note might be made of the case of Kavanagh v. Evans, 6 Cir. 1951, 188 F.2d 234, 235, where taxpayer for a fixed sum, granted a royalty-free license for the life of the patent, with full power in the licensee

to grant sub-licenses, but reserved a royalty-free license to himself, with the right to transfer this from himself to 'one other person.' The court held the transaction a sale and not a license, observing that 'it was entirely lawful for him to retain an undivided part or share of his exclusive patent rights.' We do not question that a taxpayer might sell a partial interest in an invention. However, to do so it should be a transfer of a measurable, identifiable share, and not of an undefined one of elastic proportions dependent upon how many subsequent 'shares' the grantor might elect to create. Whether we would agree with the actual decision in Kavanagh as a proper application of this principle is another matter. It is clear that this principle is not applicable to the facts in the case at bar."

The Report of the Senate with reference to Section 1235 of Title 26 U.S.C.A. (U. S. Code Congressional and Administrative News, 1954, Volume 3, p. 5082 et seq.) stated:

" * * * your committee intends, in subsection (a), to give statutory assurance to certain patent holders that the sale of a patent (whether as an 'assignment' or 'exclusive license') shall not be deemed not to constitute a 'sale or exchange' for tax purposes solely on account of the mode of payment."

At pages 5082 and 5083 it is stated:

"The section does not detail precisely what constitutes the formal components of a sale or exchange of patent rights beyond requiring that all substantial rights evidenced by the patent (other than the right to such periodic or contingent payments) should be transferred to the transferee for consideration. This requirement recognizes the basic criteria of a 'sale or exchange' under existing law, with the exception noted relating to contingent payments * * *. To illustrate, exclusive licenses to manufacture, use,

and sell for the life of the patent, are considered to be 'sales or exchanges' because, in substantive effect, all 'right, title, and interest' in the patent property is transferred (irrespective of the location of legal title or other formalities of language contained in the license agreement). Moreover, the courts have recognized that an exclusive license agreement in some instances may constitute a sale for tax purposes even where the right to 'use' the invention has not been conveyed to the licensee, if it is shown that such failure did not represent the retention of a substantial right under the patent by the licensor. It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not *substantially all rights of the owner in the patent property have been released to the transferee,* rather than recognizing less relevant verbal touchstones. * * * *". (Emphasis ours.)

We do not feel that the Hans Jordan case, supra, 27 T.C. 265 or the Kavanagh case, supra, 188 F.2d 234 provides persuasive authority for the plaintiffs' position that the transfer from Vaughn to Lux and Greenleaf of rights in Patent No. 2,358,673 was a sale of capital assets; nor can we find support for plaintiffs in the language of other reported cases we have studied, or in the Senate Report or Regulations mentioned herein.

"Rights to a patent" means the traditional rights given the inventor by a patent; "all substantial rights" means all of those original rights which are of value at the time the rights to a patent (or an undivided interest therein) are conveyed. The transaction from which the income claimed as a capital gain accrues is the one to be scrutinized, weighed and measured in ascertaining whether the sale of a capital asset has been accomplished.

The conveyance of a non-exclusive license to manufacture or use or sell, or to do all three things, not limited fractionally or area-wise or in some other manner to show a measurable, identifiable share, is not a transfer of a capital asset; nor, in our opinion, is a subsequent transfer of a so-called exclusive license for the same rights, but subject to the first license. That the end result of such latter conveyance may accomplish a divestiture of all substantial rights which the transferor had in the patent *at the time,* is not the proper criterion. But should we adopt such a method of appraisement, we should still not assist plaintiffs. Vaughn retained a substantial right which had nothing to do with the transfer on which he bases his claim, which was not a part of the purchase price for such transfer, which was not retained to insure payment of such purchase price: he retained the right to receive royalties from Kautenberg on said patent.

We hold that the transfer from Vaughn to Lux and Greenleaf of rights in Patent No. 2,358,673 was not a sale of a capital asset.