OLIVER B. KILROY and ALICE W. KILROY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kilroy v. Commissioner
Docket No. 6015-76
United States Tax Court
T.C. Memo 1980-489; 1980 Tax Ct. Memo LEXIS 98; 41 T.C.M. (CCH) 292; T.C.M. (RIA) 80489; 213 U.S.P.Q. (BNA) 429; October 28, 1980, Filed Fred Luyties, for the petitioners. Milton J. Carter, Jr., for the respondent. GOFFE
*429 MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax against petitioners as follows: Taxable Year
Deficiency
1969
$5,839 [1]
1972
3,585
1973
725
The issues for decision [2] are: *100 (1) Whether petitioners are entitled to deductions for expenditures incurred in 1972 and 1973 in connection with (a) their inventing activities, (b) their mining exploration activities, and (c) management of their investments; and *430 (2) Whether petitioners are entitled to deductions for their share of partnership losses from Kilroy Enterprises due to expenses incurred in 1973 in connection with inventing and mining exploration activities. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulations of fact and the exhibits attached thereto are incorporated by reference. The petitioners, Oliver B. and Alice W. Kilroy, husband and wife, resided in Tucson, Arizona, at the time they filed their petition in this case. Alice W. Kilroy is a party to this action solely because she filed joint Federal income tax returns with her husband during the years here in issue. Therefore, Oliver B. Kilroy will be referred to sometimes as Kilroy and sometimes as petitioner in this case. During 1972 petitioner was involved in several activities. He managed his personal investments, worked with his inventions, and engaged in mining exploration *101 via core drilling. Late in 1972, Kilroy, his wife, and children formed Kilroy Enterprises, a limited partnership, for the purposes of acquiring, developing, and marketing mining ventures and patent claims. Kilroy transferred the following into Kilroy Enterprises: (1) $5,000 in cash; (2) the rights to certain patent applications and disclosure documents; and (3) various mining claims. The patent applications and documents related to: (1) an interlocked pallet and container system; (2) a substance exhibiting anti-fungal properties and the method of preparing the substance; (3) a hydraulic mining system; (4) a method for preparing an antiviral agent; and (5) a substance effective against certain allergy systems and its method of preparation. Two U.S. patents regarding his interlocked pallet and container system were issued to Kilroy in 1973. The patent applications were filed in 1972. Two foreign patents regarding this system were issued to Kilroy in 1974 and 1975. These patent applications were also filed in 1972. This system is designed to prevent spillage from or slippage of crates on top of pallets and to increase the number of containers that could be handled on a pallet.
*102 Four U.S. patents relating to his hydraulic mining system were issued to Kilroy in 1974 and 1976. The first two patent applications were filed in 1972; the third in 1973; and the fourth in 1975. Three foreign patents regarding this system were issued to Kilroy in 1973, 1975 and 1978. These three patent applications were filed in 1973. This system can be used in underground mining, particularly coal, and is designed to save electric costs by using hydraulic power and using electricity at night. During 1972 and 1973 Kilroy wrote letters trying to interest 11 different pharmaceutical companies in his antibiotic substance. During 1973 Kilroy tried to sell a license of his interlocking pallet and container system patents to at least six different packing companies. Since first inventing the system he has continued to improve it and has attempted to market it. This system is commercially applicable to the produce industry in that it would reduce spillage and could reduce labor costs. During and after 1973, Kilroy tried to market his hydraulic mining system to various oil, gas, and mining companies. He contacted six companies in 1973. He has also continued to modify this *103 system and has applied for and received additional patents for it. At various times during the years in issue Kilroy and Kilroy Enterprises employed a microbiologist, patent attorneys, and a consulting economist in connection with Kilroy's inventions. They also contacted consulting engineers about the marketability of his inventions. Petitioner and Kilroy Enterprises incurred office expenses in connection with their inventing and mining activities (core drillings). The parties stipulated that petitioner would have testified that he spent approximately 10 percent of his time managing personal assets. The rest of his time was spent on his inventing *431 and mining activities. Petitioner determined, by comparing the expenses spent for each activity, that he spent approximately 72 percent of his time on inventing activities and 18 percent of his time on mining activities. In 197o this Court decided another case involving the petitioner. [3] That case involved the tax years 1965, 1966, 1967 and 1970. During those years Kilroy had no patents, had not even filed any patent applications, and made only isolated attempts at inventing. Kilroy did not file his first patent application until *104 January of 1972. In his statutory notice of deficiency, the Commissioner determined that petitioners are not entitled to deduct losses in 1972 from Kilroy's inventing and mining activities because he was not in the business of inventing or mining. The Commissioner also determined that they are not entitled to deduct Kilroy's distributive share of the losses from Kilroy Enterprises in 1973 because it was not in the business of inventing or mining. The Commissioner further determined that petitioners are not entitled to deduct any office expenses incurred in connection with any of Kilroy's activities during 1972 and 1973. OPINION Petitioner contends that he and Kilroy Enterprises were engaged in the business of inventing and mining and that, therefore, the disputed expenses are deductible. Kilroy contends: (1) that the research and experimental costs for the inventing activities of petitioner and Kilroy Enterprises are deductible under section 174, Internal Revenue Code of 1954; [4] (2) that the miscellaneous expenses relating to those inventing activities are deductible under section *105 174 and those relating to the mining activities of petitioner and Kilroy Enterprises are deductible under section 617; (3) that, in the alternative, those miscellaneous expenses relating to such inventing and mining activities are deductible under section 162 or section 212; and (4) that the miscellaneous expenses allocable to his management of personal assets are deductible under section 212. Respondent contends: (1) that none of the research and experimental expenses or the miscellaneous expenses allocable to the inventing activities of Kilroy and Kilroy Enterprises are deductible under section 174 because they were not incurred in connection with a trade or business; (2) that the miscellaneous expenses relating to the mining activities are not deductible under section 617 because they were not directly related to exploratory drilling; (3) that these miscellaneous expenses are not deductible under section 162 or section 212 because neither petitioner nor the partnership met the requirements for deductibility set forth in those sections; and (4) that the miscellaneous expenses allocable *106 to the management of Kilroy's personal assets are not deductible under section 212 because he has not established that such expenses were incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Kilroy had numerous investments identified on his tax returns. The parties stipulated that Kilroy would have testified that he spent 10 percent of his time "managing personal assets." Petitioner claims that because he spent this amount of time managing personal assets he should be able to deduct 10 percent of his miscellaneous expenses under section 212 for this activity. The burden is on the petitioner to show that he had ordinary and necessary expenses incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. See Welch v. Helvering,290 U.S. 111 (1933). While we are sure that petitioner incurred some expenses in his office for the purpose of managing personal assets, we have no testimony or *107 evidence indicating what is encompassed by the phrase "managing personal assets." Without such evidence we have no way to characterize, for section 212 purposes, the activities for which these disputed expenses were incurred. Petitioner probably could have provided the necessary explanation and sustained his burden had he testified, but Kilroy was not here. Therefore, respondent's position on this issue must be sustained. Respondent has admitted that petitioner incurred research and experimental expenses in the amount of $22,986 in 1972 and that Kilroy Enterprises incurred research and experimental expenses in the amount of $20,605 in 1973. What respondent contends is that these expenses were not "in connection with his trade or business" as required by section 174. [5]Section 174 was enacted to *432 encourage expenditures for research and experimentation, but these expenses had to be in connection with a trade or business. The concept of "trade or business" in section 174 is similar to that in section 162. See Snow v. Commissioner,416 U.S. 500 (1974), revg. 482 F.2d 1029 (6th Cir. 1973), *108 affg. 58 T.C. 585 (1972). This Court has held that the exploitation of inventions through royalties, sales of patents, or otherwise may constitute a business. Avery v. Commissioner,47 B.T.A. 538 (1942). [6] Whether an individual is engaged in a trade or business for profit is a matter of intent to be determined from the facts. Sec. 1.183-2(a), Income Tax. Regs., Hirsch v. Commissioner,315 F.2d 731 (9th Cir. 1963). The fact that the activity was conducted at a loss does not in itself preclude its being considered a business, although it is a factor to be considered. Doggett v. Burnet,65 F.2d 191 (D.C. Cir. 1933). While it is true that neither Kilroy nor the partnership has received any income from these inventing activities, their actions over a period of years have convinced us that they are engaging in the trade or business of inventing. *109 Over a period of six years, beginning in 1972, Kilroy has applied for and received numerous patents. "If pleasure were the only incentive and recompense sought by the petitioner in developing his [inventions], there was no necessity to go to the trouble and expense of procuring patents. Avery v. Commissioner,supra, at 541-542. [7] This Court has also found a lack of profit motive in cases where the taxpayer did not apply for patents on his inventions. Downs v. Commissioner,49 T.C. 533 (1968). [8] Also during the years in issue and since that time, petitioner has distributed literature about his inventions to various companies in an attempt to market them. Petitioner's marketing attempts have been substantial. He has sought advice from consulting engineers on the marketing potential of these inventions. It is clear from various letters introduced into evidence that petitioner made substantial marketing efforts and sought advice of the market potential of his inventions. Because of respondent's hearsay objections to these letters, we have not admitted them for the purpose of establishing the truth of any statements made therein. But such *110 evidence is admissible for limited purposes and we have admitted these letters for the purpose of showing that Kilroy did mail and receive those letters and, therefore, that he made substantial efforts to market his inventions. If petitioner were not interested in making a profit there would have been no need for him to patent his inventions or attempt to market them. It is true, as respondent contends, that Kilroy's gross receipts have been negligible, but this is the type of business that may take time to produce income, though the income eventually produced may be substantial. It is also true, though irrelevant, that petitioner has substantial outside income and is not dependent on income from his inventing activities. But Kilroy's actions relating to his inventing activities clearly show that he was engaged in the business of inventing at least to the extent *111 required by section 174. In determining that petitioner was engaged in the business of inventing we have not considered additional "evidence" attached to petitioners' reply brief. Our decision regarding petitioner's intent in his business was based only on admissible evidence. We are not bound by our decision in the petitioner's previous case because the facts in this case are distinguishable from those in the earlier case. In that case Kilroy was able to prove only an isolated instance of research. Here there is plenty of evidence indicating that petitioner was engaged in the business of inventing. Therefore, we hold that petitioner's research and experimental expenses allocable to his inventing business, whether incurred directly or through the partnership, are deductible under section 174. Respondent also contends that the miscellaneous office expenses incurred by Kilroy and Kilroy Enterprises are not deductible under section 174. We have already concluded that Kilroy and the partnership were in the trade or business of inventing for purposes of section 174. That petitioner used his office in connection with his inventing business is clear from letters received from and *112 sent to his office. Petitioner used his office to coordinate his research and to try to market his inventions. *433 In enacting section 174Congress intended to encourage new inventions and discoveries by small businesses by allowing them to deduct these types of expenditures. This allows the small businessman to compete with the larger businesses which already have established research departments. This Court has allowed deductions pursuant to section 174 for utility expenses, such as the telephone, travel expenses, and labor costs incurred in invention activities. [9] If Congress had intended that office expenses connected with research and experiments not be deducted under section 174, it could have excluded them quite easily. Therefore, the percentage of the office expenses of Kilroy and the partnership which relate to their inventing activities is deductible. Petitioner contends that the office expenses which relate to his exploratory core drilling are also deductible.Kilroy was actively engaged in exploratory core *113 drilling. Respondent allowed deductions, under section 617, for some expenses incurred in the drilling but disallowed the office expenses incurred in connection with such drilling because these expenses were "too indirect" to be deductible under section 617. There is nothing in the language of section 617 which suggests that Congress intended to disallow the deduction of office expenses incurred in exploratory core drilling.In addition, this Court has held that Congress "intended to allow as deductions all expenditures reasonably connected with preparations for extracting the ore." Estate of DeBie v. Commissioner,56 T.C. 876, 892 (1971). Kilroy's office expenses and those of Kilroy Enterprises relating to the exploratory core drilling were reasonably connected with preparations for extracting ore. Therefore, petitioner and Kilroy Enterprises are allowed to deduct office expenses relating to exploratory core drilling. Respondent contends that we should not allow a deduction for the incidental expenses of either the inventing activity or the mining activity. He reasons *114 that petitioner has not established which portion belongs to each activity and that, therefore, none of the incidental expenses should be deductible. The parties have stipulated that petitioner would have testified that he spent 10 percent of his time managing personal assets. We have decided that petitioner has not carried his burden with respect to the deductibility of office expenses incurred in connection with the management of those assets. However, the parties' stipulation indicates that the rest of the office expenses were attributable to the inventing and mining activities.The stipulation of the parties made at trial gives a reasonable basis for allocating 10 percent of the incidental expenses to the management of personal assets and 90 percent to the inventing and mining activities. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Since we have found that the incidental expenses for both the inventing and mining activities are deductible, we hold that 90 percent of the incidental expenses is deductible as relating to the mining or inventing activities and 10 percent is not deductible because, as stipulated, it relates to expenses incurred for the management *115 of petitioner's personal assets. Decision will be entered under Rule 155.
Footnotes
1. Taxable year 1969 is in issue because of a net operating loss carryback from 1972 which relates to the deductions disallowed by the Commissioner for taxable year 1972.↩
2. In their petition, petitioners requested this Court to determine an overpayment for taxable year 1970 in the amount of $5,021. On March 22, 1974, petitioners filed a claim for refund of this amount for taxable year 1970 because of an NOL they claim was produced in 1973 by the deductions which are the subject of the Commissioner's deficiency determination for 1973. There is no evidence that the Government has ever acted on this refund claim. In the statutory notice of deficiency which precipitated the petition herein (which notice was dated April 1, 1976), the Commissioner not only determined the abovelisted deficiencies for taxable years 1969, 1972, and 1973, but he also had this to say about petitioners' claim for refund of 1970 taxes: In making this determination of your income tax liability, careful consideration has been given to your claim for refund filed on March 22, 1974. If a petition to the United States Tax Court is filed against the deficiency proposed herein, the issue set forth in your claim for refund for the tax year 1970 should be made a part of the petition to be considered by the Tax Court in any redetermination of your tax liability. If a petition is not filed, the claim for refund will be disallowed, and official notice will be issued by certified mail in accordance with section 6532(a)(1) of the Internal Revenue Code of 1954. Both parties have proceeded on the erroneous assumption implied in this statement that we have jurisdiction to determine an overpayment for petitioners' taxable year 1970. We do not. Sec. 6512(b), I.R.C. 1954; Gallo et al v. Commissioner,T.C. Memo. 1975-366. If petitioners desire to litigate their right to the sought refund, they must do so in a United States District Court or in the Court of Claims. Sec. 7422. Six months having passed since they filed their claim for refund (assuming, as it appears, that the Government has not yet disallowed the claim), petitioners are still free to seek a refund of their 1970 taxes in the appropriate forum. Sec. 6532(a)(1). However, it should be noted that, since the question of fact controlling the allowability of petitioners' refund claim are the same questions of fact which we must decide in order to correctly determine petitioners' 1973 tax liability, both petitioners and the Government would probably be collaterally estopped from relitigating the factual issues which would control the outcome of that litigation, even where our decision is based on a failure of proof. Commissioner v. Sunnen,333 U.S. 591 (1948); Dean v. Commissioner,56 T.C. 895↩ (1971).
3. Kilroy v. Commissioner,T.C. Memo. 1973-7↩.
4. All section references are to the Internal Revenue Code of 1954, as amended.↩
5. SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES. (a) Treatment as Expenses.-- (1) In General.--A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction. ↩
6. See Louw v. Commissioner,T.C. Memo. 1971-326↩.
7. Magee v. Commissioner,T.C. Memo. 1973-271↩, held that procuring a patent was strong evidence of an expectation of economic return. 8. See Cherry v. Commissioner,T.C. Memo. 1967-123↩.
9. Magee v. Commissioner,T.C. Memo. 1973-271↩.