CHARLES J. BROWN and NANCY G. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 2294-79.
United States Tax Court
T.C. Memo 1983-291; 1983 Tax Ct. Memo LEXIS 491; 46 T.C.M. (CCH) 233; T.C.M. (RIA) 83291; May 25, 1983. *491 During the taxable years in issue, petitioners deducted various expenses incurred incident to the promotion and development of a Theme Park. Held, such expenses were not proximately related to any trade or business carried on by petitioner Charles Brown or his wholly owned subchapter S corporation and, therefore, are not currently deductible under section 162, I.R.C. 1954. L. B. Cann, III, for the petitioners. Ronald P. Campbell, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1973
$ 5,735.00
1974
5,741.69
1975
4,912.84
$16,389.53
The total amount of the deficiency for all 3 years is in dispute. The sole issue for our decision is whether expenses incurred during the taxable years in issue by petitioner Charles J. Brown and his wholly-owned small business corporation are currently deductible under section 162[1] or whether such expenses must be capitalized pursuant to section 263. [2] *492 FINDINGS OF FACT Petitioners Charles J. Brown and Nancy G. Brown, husband and wife, were residents of Richmond, Virginia, during the taxable years in question and at the time of the filing of the instant petition. Petitioners' joint Federal income tax returns for calendar years 1973, 1974, and 1975 were prepared on the cash receipts and disbursements method of accounting and were timely filed with the Internal Revenue Service Center in Memphis, Tennessee. The notice of deficiency was mailed to petitioners on November 24, 1978. On February 22, 1979, petitioners timely filed a petition with this Court for a redetermination of the deficiency. Charles J. Brown (hereafter sometimes referred to as "petitioner") studied engineering for 3 years at Rensselaer Polytechnic Institute and received a general engineering degree from that institution in 1945. In 1949 he received an A.B. degree in history from the University of Virginia. From 1949 to 1955, Charles *493 Brown was employed as a sales engineer in various divisions of the International Nickel Company. In that capacity he traveled throughout the United States selling the company's products to the pulp and paper industry, the food industry and the petroleum and petro-chemical industry. During the period 1955 to 1961, Mr. Brown was employed first as an assistant to the president of the Freeport Sulfur Company and later as vice-president of Freeport Nickel Company, a subsidiary of that organization. While with Freeport Sulfur Company petitioner was responsible for arranging a $120 million financing package for the company's development of a nickel processing plant to be located in Cuba and Louisiana. During his association with Freeport Nickel Company, petitioner set up distributorships for the company in Europe. In 1961, Mr. Brown joined Jones & Laughlin Steel Corporation as executive vice-president of its stainless steel distributing division. The division employed approximately 7,000 persons and operated 10 plants in the United States. Petitioner traveled extensively with Jones & Laughlin to Europe and throughout North America and the Caribbean. After leaving Jones & Laughlin, *494 petitioner became president of Metal Flo Corporation. In 1966, Metal Flo was sold to a London Company, Tube Investments. Mr. Brown continued his employment as an executive with the Metal Flo Division of Tube Investments until 1967. During the time he worked at Metal Flo, petitioner performed services on a part-time basis relative to his earlier employment with Freeport Nickel. He attempted to procure a source of nickel for Freeport Nickel's Louisiana refinery. The search for a new mining source was necessitated by the nationalization of the corporation's mining interests in Cuba in 1960. From sometime in 1967 to early 1969, petitioner performed certain services for Tube Investments, This work included advising the company concerning the creation of various distributorships in the United States as well as a variety of other projects. On his 1968 and 1969 Federal income tax returns, Mr. Brown attached Schedules C which listed his principal business activity as "Business and Financial Consultant." Petitioner earned $40,000.03 in 1968 and $5,833.27 in 1969 from his work for Tube Investments in those years. These amounts were reported on W-2 forms for both years. In 1968, Charles *495 Brown and Dr. Dreyer organized the Cumberland Exploration Company (a small business corporation) to finance the development of small mining operations. Petitioner, as president and a 50-percent shareholder, attempted to locate financing for the various projects of the corporation. Cumberland Exploration Company filed Federal income tax returns for the taxable years 1968 and 1970 showing minimal assets and no income or receipts.No returns were filed for the corporation after 1971. Although petitioner expended considerable effort Cumberland Exploration Company never had a successful project. In 1968, petitioner, at the request of Leon Hess, Chairman of the Board of Hess Oil and Chemical Corporation, prepared a report concerning the potential world markets for sulfur and the economic feasibility of a sulfur pelletizing process. Mr. Brown's expenses were paid by the corporation. However, petitioner received no income for preparing the report as his recommended proposal did not materialize. During the years 1968 through 1970, Mr. Brown attempted to procure new construction clients for a major Italian construction company, Societa Italiana per Condotte d'Acqua (Condotte). Despite *496 considerable efforts on petitioner's part none of the projects was ever developed and consequently no remuneration was received from Condotte. In 1968, Charles Brown also prepared a world market and economic feasibility study for National Bulk Carriers with respect to a nickel mining operation in Venezuela. The proposed project ultimately was discontinued when the President of Venezuela, National Bulk Carriers' contact in country, was defeated for re-election and the mines were subsequently nationalized. As Mr. Brown's compensation for this project was to be in the form of a royalty on the nickel produced by the mine, no payments were ever received. From approximately 1970 through 1972, petitioner performed services for Enmail Machine Corporation. The corporation owned a patented device for stuffing envelopes and packages. Mr. Brown was retained to develop and promote the corporation and its services in the United States. Petitioner reported income in the form of stock received from Enmail Machine Corporation in the amounts of $4,000, $2,000 and $2,000 during 1970, 1971 and 1972, respectively. In 1970 and 1972, Mr. Brown and others formed two corporations, Logistics International, *497 Inc., and Universal Logistics, Inc. The purpose of these corporations was to provide electronic repair services in underdeveloped countries. Petitioner was a stockholder in Universal Logistics, Inc. He did not report any income from or with respect to any activities in connection with either corporation. On April 6, 1972, petitioner organized and established Conway Estates, Ltd. (Conway Estates), his wholly-owned corporation. The officers of Conway Estates were petitioner Charles J. Brown, president and treasurer; petitioner Nancy G. Brown, vice-president; and F. Elmore Butler, secretary. The company's directors at the time of its incorporation were: petitioners Charles and Nancy Brown, F. Elmore Butler, Mark Woodnut, Albert Lewis Brown and John C. Hagen, III. At all times during the period April 6, 1972 through August 31, 1980, Charles Brown was the president and sole shareholder of Conway Estates. The Federal income tax returns (Forms 1120S) of Conway Estates for its fiscal years ending August 31, 1973, 1974, and 1975 were timely filed and treated Conway Estates as a corporation which had elected to be taxed as a small business corporation under subchapter S of the Internal *498 Revenue Code of 1954. The purpose of Conway Estates was to promote and develop a Theme Park near Williamsburg, Virginia. The Theme Park was to be in historical commercial center modeled after tourist attractions in the United Kingdom such as St. James Palace, the Tower of London, Burlington Arcade, Buckingham Palace, Stonehenge and the Village of Stratford. The Park was to feature English goods for sale as well as hotel and restaurant facilities. Petitioner Nancy G. Brown owned in fee simple a 70-acre tract of land in Toano, Virginia, approximately 6 miles from Williamsburg. In 1972, Conway Estates hired Real Estate Research Corporation to perform a feasibility study of the Theme Park to be built on the 70 acre tract in Toano. Also in 1972, Conway Estates hired the firm of Marcou, O'Leary and Associates, Inc., to conduct a market survey for the Theme Park, again using the 70 acre tract as the presumed location. Conway Estates also hired E. F. Sinnott and Sons, Architects, to prepare drawings and sketches of the Theme Park in Toano. These architectural services continued from 1972 through 1975. During the taxable years in issue, Mr. Brown traveled extensively to England and *499 other locations to arrange financing for the Theme Park, to locate qualified hotel operators for the hotels planned for the Park and to make arrangements with companies whose products were to be exhibited and sold at the Park. Petitioner made expenditures of $20,460, $17,481.40 and $19,245.87 during 1973, 1974 and 1975, respectively. These amounts were all reported as "Other Business Deductions" on Schedule C of petitioners' joint Federal income tax returns for the years in issue. During 1973, 1974 and 1975, Conway Estates made expenditures of $2,671, $2,061.72 and $3,947,46, respectively, all of which were claimed as business expenses in those years. The resulting net operating losses of Conway Estates in those same amounts were deducted by petitioners on their joint returns for the years in issue. These expenditures made by Mr. Brown and Conway Estates were for travel, entertainment, mailing, secretarial service and telephone expenses relative to the promotion and development of the Theme Park. Petitioner and Conway Estates planned to finance the construction of the Theme Park by a combination of loans from banks and the British Government. During the taxable years in issue *500 Mr. Brown, on behalf of Conway Estates, made application for or discussed financing for the Theme Park with various lenders and mortgagees. The only business purpose of Conway Estates specifically set forth in its Articles of Incorporation was to acquire and develop real estate. The corporation was also authorized generally to engage in any business activity not prohibited by law. Neither Mr. Brown nor Conway Estates had any income or receipts with respect to the Theme Park or any other business activity during the calendar years 1973 through 1980. The proposed Theme Park was not constructed or placed in operation during the taxable years in issue or at any time prior to the trial in this case. Prior to or during the taxable years in issue neither Mr. Brown nor Conway Estates advertised their services in the newspaper or other media, had a business office other than the residence of petitioners, or had a business telephone listing in the telephone directory. During the taxable years in issue petitioners reported the receipt of dividends, interest and capital gains on their joint Federal income tax returns in the following amounts: 1973
1974
1975
Dividends
$34,490.00
$41,279.59
$41,990.52 Interest
1,716.00
2,743.42 Net Capital Gains
70,313.66
13,474.65
(1,390.50)
In *501 the notice of deficiency dated November 24, 1978, respondent determined that the amounts claimed as losses of Conway Estates and the expenses claimed on petitioners' Schedule C for 1973, 1974 and 1975 were not allowable deductions under section 162 but rather were capital expenditures within the meaning of section 263. OPINION
Section 162(a) provides in pertinent part: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- [Emphasis added.] Respondent contends that during the taxable years in question neither petitioner Charles Brown nor Conway Estates was involved in carrying on a trade or business and that, therefore, the expenses incurred were not deductible as ordinary and necessary business expenses. [3] *502 The determination of whether an individual is carrying on a trade or business requires an examination of all facts and circumstances involved in each case. Higgins v. Commissioner,312 U.S. 212 (1941); Ditunno v. Commissioner,80 T.C. 362 (1983). The concept of "trade or business" was not intended to encompass every transaction entered into for the purpose of ultimate profit but rather was used in the "realistic and practical sense of a going trade or business." Koons v. Commissioner,35 T.C. 1092, 1100 (1961). We note that deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioner has the burden of proving that respondent's determination is in error and that he is entitled to the claimed deductions. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner asserts that during the taxable years in question he was carrying on the trade or business of "business and financial counseling, promoting and developing" of business ventures. [4] Petitioner argues that he has been engaged in this "business" *503 since 1967 and that his activities involving Conway Estates during the years in issue were simply a continuation of this business. The evidence presented relating to Mr. Brown's activities prior to the years in issue shows that beginning in 1949 he was employed as a sales engineer and as an executive of various corporations such as International Nickel Company, Jones and Laughlin Steel Corporation and Metal Flo Corporation. The facts also show that in the late 1960's and early 1970's petitioner advised Tube Investments on the creation of distributorships, attempted to locate financing for small mining operations for Cumberland Exploration Company, [5] prepared a report on world markets for sulfur for Hess Oil and attempted to procure clients for Condotte, an Italian construction firm. Mr. Brown also prepared a feasibility study for National Bulk Carriers, performed unspecified promotional services for Enmail Machine Corporation and organized two corporations for the purpose of providing electronic repair services in underdeveloped countries. In the performance of all of these activities petitioner received income only from Tube Investments and Enmail Machine Corporation. [6] While *504 we agree with petitioner's characterization that these activities constituted a "series of diverse business ventures" that share Mr. Brown's "energy and expertise" as a "common denominator" we are reluctant to hold that these varied activities constituted the carrying on of a single trade or business within the meaning of section 162. The question is one of definition. Petitioner would have us label these disparate activities under the broad umbrella term of "business and financial consultant, promoter and developer" of business ventures and further determine that together they constitute a single trade or business. The alternative is to conclude simply that Mr. Brown performed unrelated services for various companies over a period of years. The latter seems to us the more reasonable conclusion. Moreover, we fail to see the significance of these *505 prior undertakings, however characterized, to Mr. Brown's activities with regard to Conway Estates and the proposed development of a Theme Park during the taxable years in issue. [7] The pertinent facts are as follows. Petitioner Charles Brown organized Conway Estates on April 6, 1972. At all relevant times Mr. Brown has been the president and sole shareholder of the corporation. The purpose of Conway Estates was to promote and develop a Theme Park near Williamsburg, Virginia. Petitioner Nancy Brown owned a 70-acre tract of land approximately six miles from Williamsburg. In 1972, Conway Estates hired companies to perform a feasibility study, a market survey and to prepare architectural drawings for the proposed Theme Park. Mrs. Brown's property was used as the presumed location of the Theme Park for these studies. During the years in issue, Charles Brown traveled extensively to promote and obtain financing for *506 the proposed Theme Park. Petitioners and Conway Estates claimed the following amounts [8] as business expenses during the taxable years in issue: 1973
1974
1975
Petitioners
$20,460.00
$17,481.40
$19,245.87
Conway Estates
2,671.00
2,061.72
3,947.46
These expenditures were primarily for travel, entertainment, mailing, secretarial service and telephone expenses relative to the promotion of the Theme Park. [9]
Petitioner seeks to establish that during 1973--1975 he was carrying on the business of counseling, promoting and developing business ventures separate from the "business" of Conway Estates. In order *507 to do so it is incumbent upon petitioner to establish that the compensation he sought from his activities during the years in issue is other than the "normal investor's return and that income received is directly for his services rather than indirectly through the successful operation of the corporate enterprise." Deely v. Commissioner,73 T.C. 1081, 1093 (1980). In Whipple v. Commissioner,373 U.S. 193 (1963), the United States Supreme Court formulated the applicable rule of law as follows: Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though *508 substantially the product of his services, legally arises not from his own trade or business but from that of the corporation. * * * 373 U.S. at 202. (Emphasis added). Thus, petitioner must prove that his activities were "conducted for a fee or commission or with the immediate purpose of selling the corporations at a profit in the ordinary course of that business." Deely v. Commissioner,supra at 1093; Millsap v. Commissioner,46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Certain of petitioner's arguments merit comment. Petitioner argues that Conway Estates was organized in 1972 not as an investment vehicle but rather to lend credibility to his proposed Theme Park venture.Mr. Brown testified that it gave the project respectability to have it promoted by a company rather than by an individual. While this may be true under certain circumstances, we find it doubtful that it would make any significant difference to any serious investor whether he was dealing with an individual or that individual's wholly-owned, minimally capitalized corporation. [10] *509 Petitioner also argues that there was no agreement between petitioner Nancy Brown and himself to transfer the 70-acre parcel to Conway Estates. Mr. Brown testified that he originally considered Connecticut as a possible location for the Theme Park but rejected it because of unfavorable weather conditions. Washington, D.C. was also considered and rejected. The Williamsburg, Virginia area was ultimately selected because of the more favorable weather, the large population of the surrounding area and because of the existing tourist attractions in the immediate area. Petitioner's argument seems to be that even though Nancy Brown happened *510 to own a 70-acre parcel near Williamsburg and that even though this tract was used as the subject of several feasibility studies for the development of the Theme Park that it was likely that another parcel of land would ultimately be selected. [11] We find this suggestion totally incredible. In order to remove his case from the rule enunciated in Whipple v. Commissioner,supra, petitioner seeks to persuade the Court that his efforts to promote the Theme Park, if successful, would be rewarded by a fee. As we have discussed, even if there was no express agreement concerning *511 the use of Nancy Brown's property we find it unbelievable that there was not at least a tacit understanding that the property would be transferred to the corporation (or, in any event, used as the site for the Theme Park) if the search for financing was successful. Given those facts we find it extremely improbable that petitioner would supply the initial idea, procure the financing and provide the location for the Theme Park and then be content to walk away without an interest in the project's future success whether in the form of salary, royalties or appreciation of his equity interest. Thus, we are unable to conclude that petitioner has met his burden of proving that he was engaged in any trade or business separate from that of his wholly-owned corporation, Conway Estates. Rather, we find that the facts presented here are persuasive that Mr. Brown's endeavors on his own behalf and on behalf of Conway Estates relating to the proposed Theme Park were merely preparatory to a possible business enterprise which during the years 1973 through 1975 was prospective only. See Downs v. Commissioner,49 T.C. 533, 540 (1968). Petitioner does not suggest that "events of sufficient magnitude" *512 had occurred sufficient to put him or Conway Estates in the trade or business of operating a Theme Park. Hoopengarner v. Commissioner,80 T.C. 538 (1983).
The law is clear that current deductions for start-up or pre-opening costs incurred by taxpayers prior to the beginning of actual business operations are not allowable under section 162. Richmond Television Corp. v. United States,345 F.2d 901 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965); Bennett Paper Corp. v. Commissioner,78 T.C. 458 (1982), affd. 699 F.2d 450 (8th Cir. 1983); Goodwin v. Commissioner,75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d. Cir. 1982). [12] In sum, we conclude that petitioner was not carrying on the trade or business of "business and financial counseling, promoting and developing" relative to the expenses incurred during the taxable years in issue. Rather, we find that the expenses incurred were pre-opening expenses not currently deductible under section 162(a). [13] *513 *514 Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. ↩
2. Respondent's disallowance of certain amounts as business expense deductions resulted in increases in petitioners' adjusted gross income for the years in issue with the corollary result that deductions for state sales taxes were increased and deductions for medical expenses were decreased.
3. Respondent argues alternatively that even if Mr. Brown and his wholly-owned corporation were engaged in a trade or business during the relevant periods, the amounts expended were not currently deductible but rather were required to be capitalized as expenditures made in the development of a capital asset. Section 263. No issue has been raised as to whether the expenses are deductible under section 212.↩
4. Mr. Brown also refers to himself as a creator and entrepreneur. ↩
5. Mr. Brown was a 50 percent shareholder of Cumberland Exploration Company and served as its president. ↩
6. The compensation received from Tube Investments in 1968 and 1969 was reported on a W-2 form and the compensation received from Enmail Corporation was in the form of stock.↩
7. Although Mr. Brown intimated that certain of the expenditures disallowed by respondent related to other ongoing projects, there is no credible evidence in the record to support a conclusion other than that the expenses incurred related solely to the proposed Theme Park.↩
8. There is no issue as to the substantiation of any of these amounts.↩
9. There is no indication in the record as to why certain amounts were reported by petitioners as "Other Business Deductions" on Schedule C of their joint return and why other significantly smaller amounts were reported as business expenses by Conway Estates. However, as Conway Estates had no income during the years in issue and Charles Brown was the sole shareholder, the resulting net operating losses in those same amounts were claimed by petitioners on their joint return with the same result as if they had been claimed directly.↩
10. Petitioner also points out that Conway Estates was authorized by its Articles of Incorporation to carry on any business not prohibited by law and that Conway Estates has in fact engaged in activities other than the proposed Theme Park. While there is some indication that the corporation engaged in other activities subsequent to the taxable years in issue, there is no credible evidence in the record that Conway Estates existed for any purpose other than the promotion of the proposed Theme Park during the period in question. We simply are unable to attach any significance to the existence of standard boilerplate language authorizing the carrying on of all business activities.
11. Petitioner points out that Nancy Brown did not have a fee simple interest in the 70 acres until 1971 and that he had the idea for the Theme Park as early as 1965. We note, however, that Mr. Brown testified that the land had been in Mrs. Brown's family prior to 1971. The record is silent as to whether she may have had a partial interest or a future interest in the land prior to that time. Petitioner also argues that the tract was too small. However, the feasibility reports make no mention of any inadequacy in size and the only evidence that additional acreage would be needed is Mr. Brown's unsupported testimony.↩
12. See, however, section 195 which permits start-up expenditures paid or incurred after July 29, 1980, to be amortized and deducted ratably over a period of not less than 60 months.↩
13. In sustaining respondent's determination that neither petitioner Charles Brown nor Conway Estates was engaged in the carrying on of a trade or business during the taxable years in question we did not consider the written protest prepared by petitioner's former counsel and submitted to respondent during the administrative process preceding the initiation of the present action before this Court. Therefore, we need not decide whether this document is admissible in evidence over petitioners' objections. Petitioners argue that the recently decided case of NCNB Corp. v. United States,684 F.2d 285 (4th Cir. 1982) reversing after rehearing en banc, 651 F.2d 942 (4th Cir. 1981), supports their position that the challenged expenditures herein are currently deductible. In NCNB Corp. the court ruled that the fact that an expenditure creates a benefit to the taxpayer over a period greater than one year does not, in and of itself, require that such expenditure be capitalized. However, in that case the court had found as a fact that the expenses in question were incurred in NCNB's branch banking business. In the instant case we have found that the challenged expenses were not incurred in the carrying on of any business by Mr. Brown or Conway Estates within the meaning of section 162, but rather were in the nature of pre-opening expenses. Because of our holding we need not consider respondent's alternative argument that even if Mr. Brown or Conway Estates was engaged in a trade or business during the years in issue the expenditures at issue nevertheless must be capitalized under section 263. NCNB Corp.↩ would be relevant only in our consideration of that alternative argument.