WILLIAM F. BEAUSOLEIL AND FLORENCE M. BEAUSOLEIL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1384-75.    Filed May 13, 1976.

*Allan E. Rappleyea,* for the petitioners.
*David W. Johnson,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency of $320.37 in petitioners' Federal income tax for 1972. Petitioners have conceded the correctness of two of the adjustments made by respondent in the computation of their 1972 income tax, and a single issue remains for decision: Whether $1,600 received by petitioner William F. Beausoleil from his employer, International Business Machines, Inc., as an Invention Achievement Award, is taxable as ordinary income under section 61[1] or as capital gain under section 1235.

### FINDINGS OF FACT

Petitioners William F. and Florence M. Beausoleil were legal residents of Hopewell Junction, N.Y., when their petition was filed. They filed their joint Federal income tax return for 1972 with the Director, Internal Revenue Service Center, Andover, Mass.

William F. Beausoleil (hereinafter petitioner) graduated from the University of Connecticut with a bachelor of science degree in electrical engineering. In 1956 he accepted employment with International Business Machines, Inc. (hereinafter IBM), in South Poughkeepsie, N.Y. During 1972 and several years prior thereto, petitioner was employed by IBM as an engineer.

During 1972 petitioner received $40,166.56 from IBM, all of which was shown as "Wages Paid Subject to Withholding" on his W-2 Form for that year. Included in this amount was $1,600 received by him as an Invention Achievement Award. Petitioners

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

reported this $1,600 on their Federal income tax return as capital gain.

When petitioner entered employment with IBM on March 20, 1956, he executed an "Employment Agreement Relating to Inventions and Confidential Information." Such an agreement was signed by all employees and became effective as of the date of their employment with IBM. The agreement provided in part:

3. It is understood that the terms and conditions of Paragraphs 4 and 5 below of this agreement shall be effective only if I am now or may hereafter be designated as an officer of IBM or as an employee with executive, managerial, technical, engineering, customer engineering, sales engineering, development or research duties.

4. I further hereby sell, transfer and assign to IBM, its successors and assigns, my entire right, title and interest in and to all inventions, improvements, ideas and suggestions, whether patentable or not, and copyrightable material (all hereinafter referred to as "Developments"), made or conceived by me, solely or jointly, during the period of my designation as set forth in Paragraph 3 above, and six (6) months after such period, in or relating to methods, apparatus, products or components thereof which, prior to the end of my employment, are manufactured, sold, leased, used or under development by, or pertain to the business of IBM.

5. I further agree promptly to disclose all such Developments to the President or acting head of IBM, or to any other person designated by him, and on request promptly to execute and deliver without further consideration, formal transfers and assignments of all such Developments for the United States and foreign countries, as well as all other documents and papers and do all other reasonable acts, required to enable IBM to apply for and secure Letters Patent or Copyright therefor in the United States and foreign countries.

6. I further agree that this agreement constitutes the entire agreement with IBM with respect to the subject matter hereof and shall supersede all previous communications, representations, understandings, and agreements, either oral or written, with IBM or any official or representative thereof with respect to the subject matter of this agreement.

For many years IBM has maintained an Invention Achievement Award plan. This plan is based upon a point system, and points are awarded to an employee who files inventions that IBM determines should be protected by patent applications or published in an IBM "Technical Disclosure Bulletin." The purpose of the plan is to recognize and reward those eligible IBM employees who make significant inventions.

Award points are given an employee for each invention for which a patent application is filed or which is published in the disclosure bulletin. Each time a qualified employee accumulates an increment of 12 award points, he reaches a numbered

"plateau" and receives an IBM Invention Achievement Award. An IBM Invention Achievement Award is in the fixed amount of $1,600 and has no relationship to the economic value of the inventions for which the 12 award points were given. In addition, at the time of the first IBM Invention Achievement Award, the employee receives jewelry (a tie bar and cuff links or a bracelet), an inscribed desk pen set, and a framed certificate. To encourage inventive activity, IBM permitted certain employees to make use of their regular work hours and IBM's equipment and facilities and other personnel in working on inventions.

In 1972 petitioner received a $1,600 award for four patent applications filed for inventions for which three patents were issued during the succeeding year. During 1972 petitioner reached the 9th plateau of the Invention Achievement Award plan and at the time of the trial was at the 11th plateau. At the time of the trial, petitioner was the "number one or number two man" among all IBM employees in the production of inventions for which award points have been given.

The $1,600 award received by petitioner in 1972 was charged by IBM to the budget of his regularly assigned operating unit at the time of the payment in the same manner as his regular salary.

Respondent determined that petitioner's 1972 $1,600 Invention Achievement Award was ordinary compensation income.

OPINION

Section 1235,[2] relied upon by petitioners, provides that a transfer of property consisting of all substantial rights to a patent by the person who produced such patent shall be considered the sale or exchange of a capital asset held for more than 6 months. Petitioner argues that the $1,600 award he received from IBM in 1972 was payment in consideration of such a transfer and that the payment is taxable as capital gain. Respondent, relying on

---

[2] SEC. 1235. SALE OR EXCHANGE OF PATENTS.

(a) GENERAL.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

   (1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

   (2) contingent on the productivity, use, or disposition of the property transferred.

section 1.1235-1(c)(2),[3] Income Tax Regs., contends that the payment was merely additional compensation for services rendered by petitioner to IBM, includable in ordinary income under section 61(a)(1) [4] and not within the reach of section 1235.

We think the evidence is abundantly clear that IBM's 1972 Invention Achievement Award to petitioner was compensation for services rendered and not consideration for the transfer of inventions or patent rights. We hold for respondent.

The issue of whether the payments were compensation for services rendered or consideration for the transfer of a patent is factual and must be resolved by careful scrutiny of the record in this case. See sec. 1.1235-1(c), Income Tax Regs.; *Thomas H. McClain,* 40 T.C. 841, 849 (1963). The utility of analyzing prior decisions is thus restricted to distilling guiding principles which may be applied to the unique factual setting of this case.

Petitioner's duties as an engineer for IBM were primarily administrative and did not include any obligation to produce patentable inventions, i.e., he was not specifically "hired to invent." See *Arthur N. Blum,* 11 T.C. 101 (1948), affd. 183 F.2d 281 (3d Cir. 1950). However, petitioner was required to execute an "Employment Agreement Relating to Inventions and Confidential Information," as were all IBM employees, as a condition, and in consideration, of employment with IBM. The agreement provides that, effective on the date of employment, the employee assigns all his right, title, and interest in and to all inventions,

---

[3] Sec. 1.1235-1 Sale or exchange of patents.

(c) *Special rules—*

(2) *Payments to an employee.* Payments received by an employee as compensation for services rendered as an employee under an employment contract requiring the employee to transfer to the employer the rights to any invention by such employee are not attributable to a transfer to which section 1235 applies. However, whether payments received by an employee from his employer (under an employment contract or otherwise) are attributable to the transfer by the employee of all substantial rights to a patent (or an undivided interest therein) or are compensation for services rendered the employer by the employee is a question of fact. In determining which is the case, consideration shall be given not only to all the facts and circumstances of the employment relationship but also to whether the amount of such payments depends upon the production, sale, or use by, or the value to, the employer of the patent rights transferred by the employee. If it is determined that payments are attributable to the transfer of patent rights, and all other requirements under section 1235 are met, such payments shall be treated as proceeds derived from the sale of a patent.

[4] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

whether patentable or not, which he might develop during his employment with IBM. This assignment covered items manufactured, sold, leased, used, or under development by IBM, or pertaining to its business.

Petitioner executed the assignment solely as part of the consideration for IBM's agreement to employ him. The record contains no evidence of other consideration of any kind for the assignment. Furthermore, under the terms of the agreement, petitioner agreed to execute and deliver "without further consideration" formal assignments of any patents covered by the agreement when requested by IBM. No provision of the employment contract or any contemporaneously executed document purports to provide for payments or similar consideration to petitioner with respect to the transfer of inventions and patents contained in the agreement. Compare *Roland Chilton,* 40 T.C. 552 (1963).

The $1,600 payment petitioner received was made pursuant to IBM's Invention Achievement Award plan. IBM adopted this plan to encourage creativity and inventiveness on the part of its employees. The manager's manual describes the plan as a supplementary arrangement to "fulfill the objective of encouraging and recognizing business contributions of employees *when regular forms of compensation are insufficient or inappropriate."* (Emphasis added.)

Under this plan an employee was given award points for each invention and, upon receiving a prescribed number of such points, was given an invention plateau award of $1,600, together with an appropriate certificate. For his first IBM patent application, an employee was given an inscribed desk pen set. Records were kept of the plateau reached by each employee, and special recognition and publicity were given for sustained achievement.

The Invention Achievement Award plan was only one of a complement of methods which included regular and special forms of compensation (salary increases, promotions, etc.) designed by IBM to provide flexibility in recognizing and compensating for employee contributions. In addition to the plateau award system for inventions, IBM maintained a plan for Outstanding Contributions and Invention Awards based on criteria such as economic, commercial, or industrial importance, or impact on some major IBM function or scientific or engineering development. Such awards carried a minimum cash award of $1,000.

Ceremonies were held to honor employees who made inventions. IBM executives also sent letters of congratulations to employees who had made significant inventions.

There is nothing in the description or application of the Invention Achievement Award plan indicating any connection whatsoever with the assignment agreement executed by the employee at the time of his employment with IBM. Importantly, the amount paid was not dependent upon "production, sale, or use by, or the value to, the employer of the patent rights transferred" to it. See sec. 1.1235-1(c), Income Tax Regs. For example, petitioner testified that it was estimated that one of his inventions would save IBM $242 million. Yet he received only three plateau award points for each invention, and those points were credited toward a $1,600 plateau achievement award.

Finally, IBM treated such awards as additional compensation and not as capital investments. The amounts of the awards given an employee were charged to the cost of salaries in the office in which he worked, and Federal income taxes were withheld from the amounts paid as awards. See *Rogallo v. United States,* 475 F.2d 1, 5 (4th Cir. 1973); *Frederick W. Denniston,* 41 T.C. 667, 672 (1964), affd. per curiam 343 F.2d 312 (D.C. Cir. 1965).

Based upon examination of the nature of petitioner's relationship with IBM, as well as all the facts surrounding the award, we conclude that petitioner's $1,600 award constituted compensation for services rendered and was not attributable to, or paid in respect of, a transfer within the scope of section 1235. See *William Tiffin Downs,* 49 T.C. 533, 539 (1968); cf. *Briggs v. Hofferbert,* 85 F. Supp. 941 (D.Md. 1949), affd. 178 F.2d 743 (4th Cir. 1949); *Rose Marie Reid,* 26 T.C. 622, 633 (1956).

Petitioner maintains that he was not "hired to invent" for IBM, that his inventions and patents were his property, and that the payments by IBM were designed to compensate him for the invention and not the labor which produced it, citing *Roland Chilton, supra* at 562-563; *Thomas H. McClain, supra.* See *Arthur N. Blum, supra.* We agree with petitioner's legal premise that if a person is hired to invent a specific product, the fruits of his labor, the invention, are the property of his employer. *United States v. Dubilier Condenser Corp.,* 289 U.S. 178 (1933); see *Hans Jordan,* 27 T.C. 265, 268-269 (1956). We also find as a fact that petitioner was not "hired to invent." But that factual conclusion is relevant only to the question of ownership of the

invention, i.e., whether petitioner had any substantial rights to transfer. Assuming arguendo that petitioner did own substantial rights which were the subject of a transfer to IBM, the payments he received must still be, in the words of section 1235(a), "in consideration of" the transfer of those rights. For the reasons stated, the $1,600 award given petitioner does not meet this requirement.

In *Roland Chilton* the employment contract specifically provided for payments to the employee for inventions and patents accepted by the employer. In both *Roland Chilton* and *Thomas H. McClain,* the payments were royalties geared to the use by, and profitability of the inventions for, the employer. Moreover, the employees in those cases were to receive royalty payments for the life of the patent despite termination of their employment by the corporation. No such nexus between transfer of the invention and the payment exists in this case. Rather, payment of awards to former employees under the IBM plan was restricted to employees on authorized leave and employees retired under the IBM retirement plan, and the payments themselves were not dependent upon the use or productivity of the patents. Thus, even though petitioner was not "hired to invent," the payment he received was nonetheless not made or received as consideration for the transfer of any invention.

To reflect the foregoing,

*Decision will be entered under Rule 155.*