HERBERT S. AND ARLENE S. LEHMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lehman v. Commissioner
Docket No. 10034-85.
United States Tax Court
T.C. Memo 1987-158; 1987 Tax Ct. Memo LEXIS 150; 53 T.C.M. (CCH) 429; T.C.M. (RIA) 87158; March 24, 1987. James B. Lewis, for the petitioners. Cheryl J. Choy-Weller, for the respondent. *151 GUSSIS
MEMORANDUM FINDINGS OF FACT AND OPINION GUSSIS, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d)(3) (redesignated as section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioners' Federal income tax for 1981 in the amount of $8,320. The issue is whether a corporate award received by petitioner Herbert S. Lehman from his employer, International Business Machines Corporation (IBM), in 1981 is taxable as ordinary income under section 61 or as capital gain under section 1235. FINDINGS OF FACT Some of the facts were stipulated and they are incorporated herein by this reference. Petitioners were residents of Poughkeepsie, New York at the time the petition herein was filed. Petitioner Herbert S. Lehman was a chemist employed by IBM in Poughkeepsie, New York during the year 1981. He was not employed as an inventor. *152 As a condition of his employment by IBM in 1960 petitioner agreed to assign his rights in all future inventions to his employer. On June 30, 1965 petitioner assigned his entire right, title and interest in his invention called "Method for Controlling the Electrical Characteristics of a Semiconductor Surface" to IBM. The assignment also assigned petitioner's entire right, title and interest in a pending patent application for said invention. Patent No. 3402081 was subsequently granted with respect to said invention. IBM maintains several award plans whose purpose is to "recognize achievements of significant or outstanding value, especially those that are beyond the levels of expected performance in the assigned jobs." In May 1981 petitioner received from IBM a corporate award in the amount of $30,000 based on patent No. 3402081. The award was treated as "wages, tips, other compensation" on the Form W-2 issued by IBM to petitioner for the taxable year 1981. A letter from IBM dated March 19, 1982 stated in part that "the award was granted to you above and beyond your normal compensation." Petitioner reported the award of $30,000 on Schedule D of his 1981 income tax return as a long-term *153 capital gain. Respondent determined that petitioner's $30,000 corporate award represented ordinary compensation income. OPINION Petitioner contends that the corporate award of $30,000 he received in 1981 from IBM represents payment for the transfer to IBM in 1965 of his rights to his invention called "Method for Controlling the Electrical Characteristics of a Semiconductor Surface" and consequently is taxable as a long-term capital gain under section 1235. [2] Respondent contends that the payment by IBM to petitioner was simply additional compensation for services taxable as ordinary income and that the provisions of section 1235 are not applicable. Respondent relies on section 1.1235-1(c)(2), Income Tax Regs.[3]
*154 In Beausoleil v. Commissioner,66 T.C. 244 (1976), the issue was whether an award paid by IBM to the taxpayer/employee pursuant to an Invention Achievement Award plan maintained by IBM was compensation for services rendered or consideration for the transfer of inventions or patent rights. As here, the IBM employee in the Beausoleil case had executed as a condition of his employment with IBM an agreement to assign all his right, title and interest in and to all inventions which he might develop during his employment with IBM. Under the Invention Achievement Award plan an employee was given award points for each invention and each time he accumulated a specified number of such points he reached a numbered plateau and was given an invention plateau award of $1,600. In 1972 the employee (who in that year had reached the 9th plateau under the plan) received a payment of $1,600 pursuant to the Invention Achievement Award plan. We concluded that the $1,600 award constituted compensation for services rendered and was not attributable to, or paid in respect of, a transfer within the scope of section 1235.[4]
*155 The issue is essentially factual in nature necessitating an examination of the relationship of petitioner with IBM as well as the nature of the award. Petitioner testified that he was not required to invent as part of his employment with IBM. But the fact remains that he did develop an invention in the IBM laboratories, devoting from approximately one quarter to one-half of his work week to the invention over a period of some three to four months. It can be readily inferred that petitioner, as a research scientist working on the properties of semi-conductor devices, could be expected in the regular course of his employment to engage in research leading to a patentable process. That this result was contemplated by IBM may be inferred by the fact that IBM required petitioner, as a condition of his employment, to agree to assign to IBM all right, title and interest in any future inventions. When petitioner assigned to IBM his rights to the patent in 1965, five years after he was employed by IBM, he received no payment at that time. It was not until 1981 that he received a corporate award of $30,000. The fact that the award was made some 16 years after the assignment strongly *156 suggests that the award payment was not intended by IBM as consideration for the transfer of patent rights but, rather, was an award compensatory in nature and in recognition of petitioner's achievement. [5]
The record shows that IBM maintained a variety of technical award plans whose purpose was to "recognize achievements of significant or outstanding value, especially those that are beyond the levels of expected performance in the assigned jobs." The various award plans were implemented in various ways in order to achieve this general corporate purpose. The program director of technical recognition programs for IBM described the award under the plan involved in the Beausoleil case as "an award for sustained inventive contributions" while the corporate award here involved was based upon an evaluation of individual *157 outstanding technical achievements which are nominated by our different divisional operating units and come to the corporate staff for evaluation and we convene a panel of experts in technology to look at these awards. The evaluation is based upon an array of factors. However, it readily appears from the evidence that both awards were based upon value to the corporation. Consequently, petitioner's effort to distinguish the Beausoleil case on the basis of the difference in the awards involved is not persuasive. The fact that the corporate award under which petitioner received the amount of $30,000 was "much rarer" than awards under other IBM plans simply underscores the special significance attributed by IBM to petitioner's invention. This special significance or value to IBM of course played a meaningful role in gauging the size of the award. Petitioner relies upon the cases of Chilton v. Commissioner,40 T.C. 552 (1963), and McClain v. Commissioner,40 T.C. 841 (1963), in support of his contention that the payment of $30,000 in 1981 was for his rights to the patent and taxable as capital gains under section 1238. We believe that the *158 cited cases are clearly distinguishable for the reasons stated in Beausoleil v. Commissioner,supra at 250: In Rowland Chilton the employment contract specifically provided for payments to the employee for inventions and patents accepted by the employer. In both Rowland Chilton and Thomas H. McClain, the payments were royalties geared to the use by, and profitability of the inventions for, the employer. Moreover, the employees in those cases were to receive royalty payments for the life of the patent despite termination of their employment by the corporation * * * We conclude on the basis of this record that the IBM corporate award to petitioner in 1981 was compensation for services rendered within the meaning of section 61(a)(1) and not consideration for the transfer of an invention or patent right under the provisions of section 1235. We hold for respondent. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. SEC. 1235. SALE OR EXCHANGE OF PATENTS. (a) GENERAL. -- A transfer (other than by gift, inheritance or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 1 year, regardless of whether or not payments in consideration of such transfer are -- (1) payable periodically over a period generally coterminous with the transferee's use of the patent, or (2) contingent on the productivity, use, or disposition of the property transferred. ↩
3. Sec. 1.1235-1. SALE OR EXCHANGE OF PATENTS. -- (c) SPECIAL RULES -- * * * (2) PAYMENTS TO AN EMPLOYEE. Payments received by an employee as compensation for services rendered as an employee under an employment contract requiring the employee to transfer to the employer the rights to any invention by such employee are not attributable to a transfer to which section 1235 applies. However, whether payments received by an employee from his employer (under an employment contract or otherwise) are attributable to the transfer by the employee of all substantial rights to a patent (or an undivided interest therein) or are compensation for services rendered the employer by the employee is a question of fact. In determining which is the case, consideration shall be given not only to all the facts and circumstances of the employment relationship but also to whether the amount of such payments depends upon the production, sale, or use by, or the value to, the employer of the patent rights transferred by the employee. If it is determined that payments are attributable to the transfer of patent rights, and all other requirements under section 1235 are met, such payments shall be treated as proceeds derived from the sale of a patent.↩
4. In Ofria v. Commissioner,77 T.C. 524, 535-536 (1981), we summarized the applicable laws as follows: In general, it has been held that when an inventor is employed for the purpose of developing inventions for his employer, and the contract between the parties provides that inventions developed during the performance of the contract became the property of the employer, then the payments to the inventor are in the nature of compensation for services, taxable as ordinary income. Conversely, if the contract does not provide that the fruits of the inventor's labor belong to the employer, and the inventor therefore has transferable property rights in his inventions, then payments in consideration of the transfer of these rights are payments in exchange for property and may qualify as gain from the sale of capital assets. [Citations omitted.]↩
5. Although not conclusive, we note that IBM did in fact treat the $30,00 award as "wages, tips, other compensation" on the Form W-2 issued by IBM to petitioner in 1981. Mr. Borgeson, senior counsel for IBM, testified that awards were treated in this matter to conform to a 1965 letter ruling from the Internal Revenue Service to IBM involving other employees.↩